# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| ROSE THOMPSON, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:12-CV-2014 CAS |
| GREYHOUND LINES, INC., | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on defendant Greyhound Lines, Inc.'s ("Greyhound") motion to dismiss Count VI of plaintiff Rose Thompson's first amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposes the motion, which is fully briefed. For the following reasons, the Court will grant defendant's motion to dismiss.

### *I. Background*

This action was filed by plaintiff on September 13, 2012, in the Circuit Court for the City of St. Louis, Missouri. Plaintiff filed a six-count petition alleging state law claims of employment discrimination and wrongful discharge. Greyhound removed the case based on diversity of citizenship, 28 U.S.C. § 1332(a). Greyhound answered the petition as to Counts I-V, but filed a motion for more definite statement as to Count VI. Plaintiff, in turn, filed a First Amended Complaint ("Complaint"), which contained the same counts but included more factual allegations. Greyhound filed on the same day an Answer to the Complaint as to Counts I-V and the instant motion to dismiss Count VI.

In her Complaint plaintiff alleges that as of December 3, 2010, she has been employed by Greyhound for over 31 years, and at the time, she was earning $23.47 an hour, plus benefits. Prior to the termination of her employment, plaintiff was responsible for the bus route from St. Louis,

Missouri to Kansas City, Missouri, Monday through Friday.  She alleges that she never fell asleep while operating a bus, but in 2009 there was an anonymous complaint that she was asleep at the wheel.  Plaintiff alleges that it was determined shortly thereafter that she had a mild case of sleep apnea, and Greyhound required that plaintiff use a "CPAP machine" at night to monitor her sleep.

In the fall of 2010, plaintiff alleges another complaint was made that plaintiff was asleep while operating the bus.  Greyhound reviewed the recent data from the CPAP machine, and determined that plaintiff was not sleeping the requisite amount of hours each night.  Greyhound terminated plaintiff's employment on December 3, 2010.  In her complaint, plaintiff disputes the accuracy of the CPAP machine, and alleges that the data was not complete.  She alleges that Greyhound terminated her employment because of her age, because she had previously filed a charge of discrimination, because she was disabled, and because she had previously filed union grievances.  She also alleges Greyhound failed to accommodate her disability, and that she was subjected to a hostile work environment.

Plaintiff brings the following claims against Greyhound in her six-count Complaint: (1) age discrimination under the Missouri Human Rights Act ("MHRA"); (2) retaliatory discharge under the MHRA; (3) disability discrimination under the MHRA; (4) failure to accommodate under the MHRA; (5) hostile work environment under the MHRA; and (6) wrongful discharge in violation of public policy.  In the motion to dismiss presently before the Court, defendant argues Count VI should be dismissed because it is preempted by the MHRA and the National Labor Relations Act ("NLRA").

## *II. Legal Standard*

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff need not provide specific facts in support of his or her allegations, Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562 (quoted case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," id. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Twombly, 550 U.S. at 555–56; Fed.R.Civ.P. 8(a)(2). The principle that a court must accept as true 556 S.Ct. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id. Plausibility is assessed by

considering only the materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint[.]" Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) (quoted case omitted). The plausibility of the plaintiff's claim is reviewed "as a whole, not the plausibility of each individual allegation." Zoltek Corp. v. Structural Polymer Grp., 592 F.3d 893, 896 n.4 (8th Cir. 2010).

### *III. Discussion*

Under Missouri law, an employee is considered to be "at-will" unless he or she is subject to a contract setting the duration of employment or delineating the reasons for which he or she can be fired. "At-will" employees can be terminated at any time without cause. Margiotta v. Christian Hosp. Northeast Northwest, 315 S.W.3d 342, 346 (Mo. 2010) (en banc). Nonetheless, the "at-will doctrine is limited in certain respects. An employer cannot terminate an at-will employee for being a member of a protected class, such as 'race, color, religion, national origin, sex, ancestry, age or disability.' Id. at 347 (citing to Mo. Rev. Stat. § 213.055 (2005)). "In addition, Missouri recognizes the public-policy exception to the at-will-employment rule." Id. (citing Fleshner v. Pepose Vision Institute, P.C., 304 S.W.3d 81, 92 (Mo. 2010) (en banc)). "The public policy exception to the at-will employment rule, often called the wrongful discharge doctrine, is very narrowly drawn. An at-will employee may not be terminated for refusing to perform an illegal act or reporting wrongdoing or violations of law to superiors or third parties." Id. (cited cases and footnote omitted).

Plaintiff was an at-will employee, and in Count VI of her Complaint she asserts a claim of wrongful discharge under the public policy exception. She claims that she was wrongfully discharged in violation of public policy for filing charges of discrimination, and for following the grievance procedures and filing grievances pursuant to a collective bargaining agreement. Defendant moves

to dismiss Count VI and the grounds that the claim contained therein is preempted by the MHRA and the NLRA.

### A.     Plaintiff's wrongful discharge claim is preempted by the MHRA.

This Court recently held that a plaintiff may not bring an action for wrongful discharge in violation of public policy where the plaintiff has an available remedy under the MHRA, as the common-law remedy is preempted by the comprehensive remedial scheme of the statute. Noel v. AT&T Corp., -- F.Supp.2d --, 2013 WL 1283844 (E.D. Mo. Mar. 27, 2013).  In Noel, the Court considered the issue in light of Fleshner v. Pepose Vision Institute, P.C., 304 S.W.3d 81 (2010), a Missouri Supreme Court opinion. 2013 WL 1283844, at *5. Compare Banks v. Ameren UE, 2005 WL 2176927, at *4 (E.D. Mo. Sept. 8, 2005) (before ruling in Fleshner, finding wrongful discharge claim was preempted); Schneider v. Sullivan Univ., No. 4:01–CV–1237 LMB, slip op. at 20–21 (E.D. Mo. Aug.4, 2004) (same); Zysk v. Sanford Brown College, Inc., No. 4:01–CV–637 CAS, slip op. at 7–8 (E.D. Mo. Jan. 22, 2002) (same).

In Fleshner, the Missouri Supreme Court considered whether a wrongful discharge public policy exception action, in which the plaintiff claimed she was fired after she cooperated with a U.S. Department of Labor investigation into whether the defendant was paying its employees overtime, was preempted by the Fair Labor Standards Act ("FLSA"). The court stated it "has consistently held that a statutory right of action shall not be deemed to supersede and displace remedies otherwise available at common law in the absence of language to that effect unless the statutory remedy fully comprehends and envelops the remedies provided by common law." Fleshner, 304 S.W.3d at 95 (internal quotation marks and quoted case omitted). Under Missouri law, "A statutory remedy does not 'comprehend and envelop' the common law if the common law remedies provide different

remedies from the statutory scheme. For example, if the common law remedy provides punitive damages, but the statutory scheme does not, then the common law scheme is not preempted." Id. at 95–96 (internal citation and quoted case omitted). The Missouri Supreme Court concluded that Fleshner's public policy exception claim was not preempted by the FLSA because the FLSA did not offer all of the remedies that were available to her under the common law, specifically punitive damages.

In Noel, this Court noted that under Missouri law punitive damages are available for wrongful discharge claims brought under the public policy exception, and the MHRA also provides a comprehensive remedial scheme that allows a court to award a plaintiff injunctive relief, actual and punitive damages. -2013 WL 1283844, at *5. (citing to Fleshner, 304 S.W.3d at 96; Mo. Rev. Stat. § 213.111.2 (2000)). Further, this Court noted that because the MHRA allows for the recovery of attorneys' fees, plaintiffs bringing claims of retaliation under the MHRA are provided with more remedies than under the common law, not less, as Missouri generally follows the American Rule which requires litigants to bear their own attorneys' fees unless otherwise authorized by statute. Id. (citing to Holmes v. Kansas City Mo. Bd. of Police Comm'rs, 364 S.W.3d 615, 630 (Mo. Ct. App. 2012)). In summation, this Court held that because the MHRA's statutory remedies fully "comprehend and envelop" the remedies provided by common law under the test articulated by the Missouri Supreme Court and, the MHRA preempted plaintiff's public policy exception claim in so far as she claimed she was wrongfully terminated for filing a charge of discrimination. Id.

The analysis in Noel applies to the present case. Plaintiff has a remedy for retaliation under the MHRA, and in fact she alleges such a claim in her Complaint. In so far as plaintiff alleges a

-6-

common law claim of wrongful discharge in violation of public policy based on the theory that she was fired for filing a charge of discrimination, this claim is preempted by the MHRA.

**B.  Plaintiff's wrongful discharge claim is also preempted by the NLRA.**

In her Complaint, plaintiff also alleges that she was discharged, in violation of public policy, in that Greyhound terminated her employment because she followed the grievance procedures in a CBA and filed grievances against defendant. Defendant argues this claim is preempted by the National Labor Relations Act ("NLRA" or "the Act"), 29 U.S.C. § 157, et. seq.

In San Diego Building Trades Council v. Garmon, the Supreme Court held that "[w]hen it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by § 7 of the ["NLRA"], or constitute an unfair labor practice under § 8, due regard for the federal enactment requires that . . . jurisdiction must yield [to the National Labor Relations Board]." 359 U.S. 236, 244 (1959). Garmon preemption "prevents States not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA, but also from providing their own regulatory or judicial remedies for conduct prohibited or arguably prohibited by the Act." Wisconsin Dept. of Industry, Labor & Human Relations v. Gould, 475 U.S. 282, 286 (1986). The doctrine is premised on Congress's overriding interest in uniform, national application of the NLRA. See St. Thomas - St. John Hotel & Tourism Assoc. v. Government of the United States Virgin Islands, 218 F.3d at 239. Therefore, "[w]hen an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board[.]" Garmon, 359 U.S. at 245.

In Count VI, plaintiff alleges that she followed the procedures and filed grievances against Greyhound pursuant to the Greyhound Lines, Inc. and Amalgamated Transit Union Local 1700

Collective Bargaining Agreement in June 2009, April 2010, and May 2010, claiming harassment by her supervisors. Plaintiff further alleges that Greyhound wrongfully discharged her as a result of her following the grievance procedures set forth in the CBA and for filing grievances.

Section 8(a)(1) of the NLRA makes it an unfair labor practice "to interfere with, restrain, or coerce employees in the exercise" of their rights under the NLRA. 29 U.S.C. § 158(a)(1). This section protects an employee's right to file grievances. See NLRB v. Eaton Corp., 623 F.2d 479 (6th Cir.1980) (finding that employer violated § 8 of the NLRA by firing employee for exercising right to file grievances under the collective bargaining agreement). Section 8(a)(3) of the NLRA prohibits discrimination in regard to "any term or condition of employment to encourage or discourage membership in any labor organization." This section has also been found to prohibit discrimination for filing grievances. See Champion Parts Rebuilders, Inc. v. NLRB, 717 F.2d 845 (3d Cir. 1983) (finding that employer violated § 8(a)(3) by discharging employee in retaliation for filing grievances). See also Platt v. Jack Cooper Transport, Co., 959 F.2d 91, 94 (8th Cir. 1992) ("[d]ischarging an employee for his union activities is prohibited by § 8" and therefore, the common law claim "would have been preempted under Garmon if filed in court under state law.'"); Hinton v. Sigma-Aldrich Corp., 93 S.W.3d 755 (Mo. Ct. App. 2002) (holding state law claim for wrongful discharge based on allegation that plaintiff was fired for refusing to prepare false disciplinary reports against union-organizing employees was preempted by the NLRA).

Here, plaintiff's state law wrongful discharge claim is based, in part, upon alleged conduct prohibited by Section 8 of the NLRA. In other words, some of the conduct that forms the basis of plaintiff's state law wrongful discharge claim – that defendant retaliated against her for filing a grievance pursuant to a CBA – is conduct arguably subject to § 8 of the Act that would support an

unfair labor practice complaint filed with the NLRB. Garmon, 359 U.S. at 245. Therefore, the Court finds that plaintiff's state law claim that she was wrongfully discharged for following the procedures and filing grievances under the applicable CBA is preempted under Garmon.

### IV. Conclusion

Plaintiff's state law claim of wrongful discharge in violation of public policy, which she raises in Count VI of her Complaint, is preempted.  To the extent plaintiff asserts that she was wrongfully discharged in violation of public policy for filing charges of discrimination, this aspect of the claim is preempted by the MHRA.  And to the extent plaintiff asserts that she was wrongfully discharged for following the grievance procedures and filing grievances pursuant to a CBA, this aspect of the claim is preempted by the NLRA. The Court will grant defendant's motion and dismiss Count VI of the Complaint.

Accordingly,

**IT IS HEREBY ORDERED** that defendant Greyhound Lines, Inc.'s Motion to Dismiss Count VI of plaintiff's Amended Complaint is **GRANTED.**  [Doc. 13]

**IT IS FURTHER ORDERED** that defendant Greyhound Lines, Inc.'s Motion for more definite statement is **DENIED as moot.** [Doc. 8]

An appropriate Order of Partial Dismissal will accompany this Memorandum and Order.

_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this ___12th___ day of June, 2013.